IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-10860-CGB |
| | § | |
| PACKET CONSTRUCTION LLC | § | |
| | § | |
| DEBTOR | § | CHAPTER 11, SUBCHAPTER V |

**SUB V TRUSTEE'S REPORT AND LIMITED OBJECTIONS TO DEBTOR'S PLAN OF REORGANIZATION [ECF NO. 69]**

TO THE HONORABLE CHRISTOPHER G. BRADLEY,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Sub Chapter V Trustee (herein "Sub V Trustee") within the Packet Construction LLC (herein "Packet" or "Debtor") Small Business Chapter 11 case, to file this his Limited Objections (the "Objections") to the Plan of Reorganization (the "Plan") [ECF No. 69], and would show unto the court as follows:

### I. BACKGROUND

1.1 Packet filed a Chapter 11 small business case on October 12, 2023 [ECF No. 1]. Sub V Trustee was appointed on October 16, 2023 [ECF No. 15].

1.2 Packet filed its Subchapter V Plan of Reorganization on January 10, 2024 [ECF No. 69]. The Order Setting Confirmation Hearing for February 29, 2024, at 9:00 a.m. was entered January 12, 2024 [ECF No. 72].

1.3 The Plan provides for treatment of creditors within five distinct classes including Class 1 – Allowed Administrative Claims, Class 2 – Priority Tax Claims, Class 3 – Secured Creditors, Class 4 – Unsecured Creditors, Class 5 – Equity Holders, to be paid over a five-year plan term.

1.4     The Plan contains a Liquidation Analysis within Exhibit B – entitled "Projected Liquidation Analysis" revealing asset value of $1,672,045.55 and $0.00 "Liquidation Value," after applying the Liquidation Value to the SBA secured claim of $2,151,526.78, leaving $0.00 available for unsecured creditors.  The Plan attaches projections as Exhibit A, showing $6,000,000.00 in net operating income in year one of the Plan and $36,000.00 available for unsecured distributions after Plan payments of priority and allowed secured claims in year one. The Plan proposes payment of all secured claims up to the value of secured creditor collateral, all administrative and priority claims and $216,000.00 to allowed unsecured claimants over the five-year term of the Plan.

1.5     Article VI of the Plan indicates that Debtor will continue to operate its business as debtor-in-possession and will discharge its duties until the Effective Date of the Plan.  Upon the Effective Date the Reorganized Debtor will continue to operate for the benefit of its creditors in compliance with terms of the Plan.  Debtor anticipates net operating income available to allowed unsecured creditors in the total amount of $216,000 and estimates allowed unsecured claims to be $5,703,594.09, resulting in 3.79% projected unsecured distribution upon completion of Plan payments (Plan, Exhibit A, Projections).

1.6     The Packet Plan provides for the following treatment of allowed claims within Classes 1-5:

    1.     Class 1 – <u>Administrative Claims of Professionals and Sub V Trustee</u> – to be paid in full on the Effective Date.

    2.     Class 2 – <u>Priority Tax Claims of Texas Comptroller and Texas Workforce Commission</u> – to be paid in full on the Effective Date or in equal monthly

installments over the 60 months from the petition date, or as agreed between the claimant and Packet.

   a. Texas Comptroller – claim of $18,492.25 POC No. 3-1, to be paid over 54 months at 9.50% interest, to begin within 30 days after the Effective Date.

   b. Texas Workforce Commission – claim of $1,574.61, POC No. 7-1, to be paid over 54 months at 9.50% interest at $35.95 per month.

3. Class 3 – <u>Secured Claims</u> – Allowed secured claims secured by property of the estate.

   a. Caterpillar Financial Services – (Claim No. 21-1) in the amount of $111,921.17, secured by a Caterpillar Backhoe Loader and a Caterpillar Track Tractor – to be paid amount of $109,500.00 at 8.50% over a 60-month period at $2,246.56 per month.

   b. Centra Funding LLC – (Claim No. 14-1) in the amount of $46,895.83 secured by a 2013 Ledwell Trailer, to be paid $30,000.00 over 5 years at 8.50% per annum in 60 monthly payments of $615.50 per month.

   c. JCB Financial Inc. – (No Claim filed is Scheduled at 2.8) in the amount of $84,000.00, secured by a skid steer and accessories, to be paid $84,000.00 at 8.50% per annum in 60 monthly payments of $1,723.39.

    d. North Mill Credit Trust – (Claim No. 24-1) in the amount of $364,455.30, secured by a 2018 Freightliner to be paid $250,000.00 at 8.50% per annum, over a 60 month term at $5,129.13 per month.

    e. Providence Equipment Finance – (No Claim filed is Scheduled at 2.10) in the amount of $55,000.00, secured by hard drives, computer rack and computer equipment, to be paid $10,750.00 at 8.50% interest per annum, over a 60-month term with monthly payments of $220.55 per month.

    f. Territorial Bank of America Samona – (Claim No. 27-1) in the amount of $70,421.32, secured by a 2020 Freightliner, to be paid $70,421.32 at 8.50% interest per annum, paid over a 60-month term at $1,444.80 per month.

    g. Texas Regional Bank – (No Claim filed Scheduled at 2.13), secured by a 2021 Ford Bronco, to be paid $40,000.00 at 8.50% per annum, over a 60-month term, with payments of $820.66 per month.

    h. Small Business Administration – (No Claim filed Scheduled at 2.014), in the amount of $2,151,526.78, secured by all Debtor's business property, to be paid $1,044,741.23 at 8.50% interest per annum, paid in 60 equally monthly installments of $21,434.47 per month.

    i. Spartan Business Solutions – (Claim No. 13-1) in the amount of $76,234.00, secured by Debtor's property, but is in lien to the SBA,

and is therefore wholly unsecured as to be paid as a Class 4 unsecured creditor.

    4.    Class 4 – <u>Unsecured Creditors</u> – all allowed unsecured claims, plus the secured creditor diminution claim, estimated at $5.7 million in unsecured claims, plus the secured diminution claims, are to be paid $216,000.00 over 5 years, estimated to result in 3.79% payment of the Plan's total allowed unsecured claims.

    5.    Class 5 – <u>Equity Interest Holders</u> – will receive no equity payments over the duration of the Plan, will be allowed to retain ownership in the Debtor.

1.7    The Plan proposes to pay administrative claims in full on the Effective Date (See, Arti. VI p. 8) in § 1191(a), or over 6 months after the Effective Date if the Plan is confirmed under § 1191(b) (Plan, ¶ 5.01).

1.8    Packet filed its MORs within the chapter 11 case, showing:

    i.    October MOR [ECF No. 52] – filed November 21, 2023
        Cash receipts - $706,248.62
        Net cash flow - $169,876.58

    ii.    November MOR [ECF No. 63] – filed December 21, 2023
        Cash receipts - $293,539.65
        Net cash flow - <$-235,227.60>

    iii.    December MOR [ECF No. 75] – filed January 22, 2024
        Cash receipts - $594,342.00
        Net cash flow - <$-15,690.70>

    iv.    January MOR [ECF No. 86] – filed February 21, 2024
        Cash receipts - $616,024.00
        Net cash flow - $160,120.20

The A/R Aging Summary attached to the December MOR reflects receivables of $2,391,147.74 with $739,165.00 as current and $847,962.78 as 1-30 days. Packet's total reported post-petition

cash receipts for October – January is $2,210,149.00, averaging $552,537.25 per month – with net cash flow of $79,079.00 or $19,769.75 per month, without secured or priority debt repayment. Debtor's December MOR reflected a negative bank balance.

1.9 Article VIII.C of the Plan provides for Property of the Estate to vest in Debtor except as otherwise provided in the Plan. However, the Plan does not appear to otherwise deal with "Vesting of Property" and may be in violation of 11 U.S.C. § 1186(a) requiring property to remain property of the estate if a plan is confirmed under § 1191(b) as a non-consensual plan.

1.10 Thirty Proofs of Claim have been filed totaling $6,446,056.28, with $2,522,599.83 in secured claims and $16,993.61 in priority claims.

1.11 Debtor's Schedules [ECF No. 1] list priority claims as $0.00, show secured claims of $3,721,727.65, and unsecured claims of $3,496,934.51, including several designated as "disputed, contingent or unliquidated." Most scheduled claims are "deemed allowed" under R. 3003(b)(1) FED. R. BANKR. P. without filing a Proof of Claim – and subject to the claim objection rights, are "allowed" claims to be paid or otherwise satisfied under the Confirmed Plan.

1.12 There appears to be some discrepancies between the secured, priority and unsecured claims amounts between the scheduled claims, the filed Proofs of Claim, and Debtor's claim summary within Art. VI of the Plan, to wit:

|  | Secured | Priority | Unsecured |
|---|---|---|---|
| Scheduled Claims | $3,721,727.65 | $0.00 | 3,496,934.51 |
| Filed Proofs of Claim | $2,522,599.01 | $16,993.01 | $3,986,462.84 |
| Estimated Unsecured Claims (Plan, Art. VI) | $2,743,198.10 | $20,066.85 | $5,703,594.08 |

Art. VII of the Plan notes that certain claims may be subject to objection within 60 days of the Effective Date, which if successful could potentially reduce certain secured or priority payments and increase allocations to general unsecured creditors.

1.13 Plan Article IX prohibits enforcement of liability against a guarantor or third party claim deeming that the confirmed Plan modifies debts to reflect a restructure and prohibits enforcement against guarantors, while the Plan is in effect, provided the Debtor makes the Plan payments.

1.14 Plan Art. VIII.F, provides that Debtor shall make all Plan payments whether the Plan is confirmed under § 1191(a) or § 1191(b), indicating cause exists for Debtor to make the Plan payments, and by Debtor making payment administrative costs will be reduced. However, Debtor does not account for the fact that Trustee is not discharged under a § 1191(b) Plan until the Plan is fully consummated, and that the Sub V Trustee shall be required to perform post-confirmation duties. Nor does Debtor account for § 1194(b) providing that the Sub V Trustee shall make the Plan payments if confirmed under § 1191(b).

## II.   ARGUMENT/ AUTHORITY

2.1 BANKRUPTCY CODE § 1191(a) provides that the court shall confirm a plan only if all the requirements under § 1129(a), other than paragraph (15) of § 1129 are met. Because § 1129(a)(15) no longer applies, individual debtors are not specifically required to file post-confirmation monthly reports in a Subchapter V case to the U.S. Trustee's Office. Further, § 1129(a)(8) and (10) are not applicable. Consequently, if all other § 1129(a) requirements are met including acceptance by all impaired classes under § 1129(a), the court is required to confirm a consensual plan.

2.2 BANKRUPTCY CODE § 1191(c) specifies that the provisions of a plan are to be fair and equitable, with respect to each class of claims, and includes the requirement that the plan provide for all projected "disposable income" received by the debtor to be applied to make payments under the plan if a plan is to be confirmed as a nonconsensual plan under § 1191(b). Compliance with the projected disposable income requirement (or "best efforts") is a mandatory condition for cramdown confirmation under § 1191(b). A GUIDE TO SMALL BUSINESS REORGANIZATION ACT OF 2019, p. 55, n. 205, Paul W. Bonapfel, U.S. Bankruptcy Judge, N.D. Ga., February 2020.

2.3 BANKRUPTCY CODE § 1191(d) specifies that the term "disposable income" means income received by the debtor which is not reasonably necessary to be expended for: (A) maintenance, support of the debtor or dependent; (B) a domestic support obligation; or (C) for payment of expenditures necessary for continuation, preservation, or operation of the debtor's business. Consequently, Debtor must allocate all disposable income to a "cramdown" plan. Debtor's projections reveal anticipated net revenue generated over post-confirmation payment period of 60 months starting at $445,255.00 in year one, or approximately $37,000 per month. Packet's average monthly post-petition net revenue as reflected within the October/November/December MORs, amounted to $19,769.00, or about $18,000.00 per month less than projected post-confirmation gross revenue shown within Debtor's Projections (Plan, Exhibit A). Packet's Projections show net operating income in year one of $36,000.00, after payment of secured/priority and administrative payments – substantially in excess of Debtor's preconfirmation performance, demonstrated by Debtor's filed MORs. Debtor should substantiate Plan feasibility, if a Plan is to be confirmed.

2.4     The Packet Plan includes provisions within Art. VIII.F governing control over distributions if the Plan is confirmed under § 1191(b).  BANKRUPTCY CODE § 1194(b) provides if a plan is confirmed under § 1191(b), that Trustee shall make payments to creditors except as otherwise provided in the plan or in the order confirming the plan.  Debtor proposes that Debtor make the Plan distributions to avoid post-confirmation administrative expenses.  However, since Trustee is not discharged until the Plan is consummated, Trustee will still retain duties, and will be required to monitor Plan payments to confirm Debtor's compliance with Plan requirements – requiring the Sub V Trustee incur fees and expenses.  Further, § 1194(b) states, the Trustee "shall" make all Plan payments of the Plan if confirmed under § 1191(b), except as otherwise provided in the Plan or Confirmation Order.  In non-Sub V Cases, courts have considered various factors to determine whether Debtor is to make plan payments including: (i) Debtor's past history; (ii) business acumen of Debtor; (iii) Debtor's post-filing compliance; (iv) good faith; (v) ability of Debtor to achieve reorganization and other factors.  *In re Pianowski,* 92 B.R. 225 (Bankr. W.D. Mich. 1988).

2.5     BANKRUPTCY CODE § 1191(c)(3)(B) requires the Plan to provide adequate remedies to protect holders of claims, in the event debtor fails to make the required payments.  Rights to Debtor's property must be preserved and unsecured creditors' rights must include the opportunity to urge default remedies before the Bankruptcy Court, including rights to convert the case to a Chapter 7 or for the Trustee to liquidate assets.  The Plan provides default remedies under Art. XIV, preserving creditor rights and setting forth secured creditor rights and cure provisions.  However, default remedies of unsecured creditors appear to be limited to those under § 1172(b)(4).  Default remedies should include rights to enforce all legal remedies upon an uncured default.

2.6     Sub V Trustee's limited objections to the Plan are:

i. <u>Feasibility</u>: Packet's post-petition operations and generation of actual gross revenue and net revenue, appear substantially less than projected post-confirmation gross revenue and net revenue. Debtor should explain how post-confirmation revenue and net revenue will equal amounts reflected within Projections. In addition, Debtor's estimated claim amounts appear less than the allowed claim amounts within Schedules and filed proofs of claims – thereby increasing Debtor payment allocations to Classes 4 and decreasing net income available to general unsecured creditors. Debtor should explain those discrepancies and how Plan Projections are accurate in view of the deemed allowed claim amounts. Debtor should submit credible evidence in support of its Projections and Plan forcibility. *Double H. Transport, LLC v. Odell (In re Double H Transport),* 603 F. Supp. 3d 468, 471 (W.D. Tex. 2023).

ii. <u>Projections v. Actual Disposable Income:</u> Debtor should be directed to pay actual income to creditors to the extent projected disposable income as stated in the Plan exceeds projected income. *See, In re Staples,* 2023 W.L. 11943 (M.D. Fla. Jan. 6, 2023). Upon confirmation, the Court should require Debtor to "true up" actual disposable income – to reflect any increase above the projected disposable income and make actual net disposable income available to creditors. Debtor should be required to provide semi-annual or annual financials to the Sub V Trustee if the Plan is confirmed under § 1191(b), whereupon the Sub V Trustee will recommend increase of disposable income payments if financials reflect an increase in

        disposable income over Projections. If Debtor disagrees, the issue can then be presented to the Court for resolution.

iii. <u>Property of the Estate:</u> The Plan should require that Property of the Estate remain estate property until the Plan is fully consummated if the Plan is confirmed under § 1191(b).

iv. <u>Mitigation of Third-Party Rights:</u> To the extent the Plan requires creditors to abate enforcement of guaranty claims or other third-party claims and deems such claims to be "restructured," the Plan contains inappropriate provisions dealing with third party rights which should be stricken.

v. <u>Payments Under the Plan:</u> The Plan proposes that Debtor make all Plan payments, while the Sub V Trustee does not oppose Debtor making some Plan payments to enhance efficiency of post-confirmation Plan performance, § 1194(b) specifies that the Sub V Trustee is to make all payments. The Court should consider applicable factors to determine if Debtor should make all or some of the Plan payments. Regardless who makes payments, the Sub V Trustee is not discharged if the Plan is nonconsensual and must monitor Debtor's post-confirmation performance. If Debtor is to make Plan payments the Debtor should provide monthly reports confirming Plan payment to the Sub V Trustee.

vi. <u>Post Confirmation Trustee Duties/Confirmation:</u> The Plan makes no provisions for Sub V Trustee duties or powers post-confirmation in the event the Plan is confirmed under 11 U.S.C. § 1191(b), and if the Sub V

Trustee is to make plan distributions under 11 U.S.C. § 1194(b), in which event the following provisions should be required:

a. Sub V Trustee will act as disbursing agent.

b. During the payment period, the Sub V Trustee shall make all payments of distributions to creditors as specified under the Plan payments other than post-petition cured monthly mortgage payments. Such remittances shall occur no less frequently than fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor following finalization of claims objections. The Sub V Trustee shall make such distributions out from an account to be established by the Sub V Trustee at an institution on the approved U.S. Trustee depository list account, which shall be maintained by the Sub V Trustee for the duration of the payment period until Plan consummation following the final payment required under the Plan (the "Sub V Trustee Account").

c. Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date and following claims objections resolutions, the Sub V Trustee shall initiate disbursement of Plan payments from the Sub V Trustee Account, less amounts reserved for the Sub V Trustee's fees and expenses, to the holders of Allowed Claims in the provisions provided under the confirmed Plan, on a pro rata basis based on the total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims will be reduced in an amount equal to the Sub V Trustee's fees and costs incurred as Sub V Trustee and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to the Sub V Trustee on or about the same time when funds are delivered directing the Sub V Trustee which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring the Sub V Trustee to withhold funds as required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no distribution. The Reorganized Debtor shall file any claim objection within 30 days after the Effective Date – and confirm all Allowed Claims to be paid under the Plan.

d. Addresses for Disbursements. Disbursements shall occur by check drawn on the Trustee Account and may be delivered by the Sub V Trustee to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the Sub V

Trustee at Michael G. Colvard, Martin & Drought, P.C., 112 East Pecan Street, Suite 1616, San Antonio, TX 78205, or (iii) if the Holder has not filed a proof of claim or otherwise provided the Trustee with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtor in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to the Sub V Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Sub V Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the Sub V Trustee until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the Sub V Trustee is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, the Sub V Trustee shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

e. No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions. Further, if the actual monthly distribution claim as allowed claim is less than $100.00 no payment to a creditor shall occur unless the distribution in excess of $100.00 on or before the next annual payment date following the Effective Date

f. Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Sub V Trustee on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, the Trustee shall have the right to void the check, and any current and future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

g. Unclaimed Distributions and Reversion. Any distribution made by the Sub V Trustee to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an

"Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtor and held by the Sub V Trustee within the Sub V Trustee Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by the Sub V Trustee to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

h. No Liability. Following entry of the Confirmation Order, any disbursements made by the Trustee on account of a Claim are deemed authorized disbursements, and the Sub V Trustee shall have no liability for these disbursements. The Sub V Trustee's obligations are limited to acting as the disbursement agent under the Plan, and the Sub V Trustee shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to the Sub V Trustee, or otherwise fails to perform its obligations under the Plan. The Sub V Trustee shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Sub V Trustee Account to cover a distribution to Holders, net of the Sub V Trustee's fees and costs. The Sub V Trustee shall not have any obligations to pursue and/or manage the Reorganized Debtor's pursuit of Causes of Action.

i. Reporting. The Sub V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Sub V Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee.

j. Notices. The Sub V Trustee may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Sub V Trustee shall be under no obligation to serve parties which are either affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

k. Post-Confirmation Fees and Expenses of the Sub V Trustee. The Sub V Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Sub V Trustee under this

paragraph from the Plan Payments of $400 per month for post-confirmation administration of plan obligations, consisting generally of: (i) recording receipts of Plan payments; (ii) depositing Plan payments; (iii) issuing payments to allowed claimants from Plan receipts; (iv) recording distributions to allowed claimants; and, (v) maintaining account records to reflect Plan payments received from the Reorganized Debtor and distributions to allowed claimants. The $400 monthly administrative fee may be paid monthly from Reorganized Debtor's Plan payments. In addition thereto, shall be entitled to reasonable attorney's fees in the event of that other non-administrative post-confirmation attorney services are required. The Sub V Trustee shall submit a fee and expenses statement to the Reorganized Debtor, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties") for non-administrative fees and expenses. The Sub V Trustee shall be compensated for his non-administrative post-confirmation duties at his normal hourly rate and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtor to the Sub V Trustee. The Sub V Trustee's fees and expense shall be disclosed in the reports filed with the Court. All parties in interest will have 21 days after the reports are filed to object to the Sub V Trustee's fees and expenses disclosed therein. If no objection is received, the Sub V Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

l. Debtor may engage post-confirmation counsel who shall be entitled to reasonable fees and expenses to be paid out of plan proceeds, following compliance with proceedings set forth in ¶ k above and in addition, post confirmation counsel for Debtor is required delivery to the Trustee, a true and correct copy of all post confirmation fee and expense statements, if confirmed under § 1191(b).

m. Distributions by the Sub V Trustee on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Sub V Trustee subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Sub V

Trustee will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Sub V Trustee will make withheld funds available to allowed claim holders within the next payment period.

n. In the event that the Reorganized Debtor is to make payments to creditors under the Plan, the Plan and not the Sub V Trustee as provided under 11 U.S.C. § 1194(b), Debtor should provide monthly reports to the Trustee confirming Plan payments. The Plan should provide for post-confirmation Sub V Trustee compensation, even if Debtor makes Plan payments if the Plan is confirmed under § 1191(b).

o. Additional Post-Confirmation Duties of the Sub V Trustee. In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties and power of the Sub V Trustee should include those relating to:

    i. The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post-confirmation affairs of the reorganized Debtor.

    ii. Right to acquire required bonding, which costs are to be satisfied out of Debtor's Plan Payments under 11 U.S.C. § 1191(d).

    iii. Right to take all steps necessary to ascertain allowed claim amounts, to prepare and issue claims recommendations and to obtain court determinations on amounts of allowed claims and distributions.

    v. Right to review post-confirmation accounting and bank statements and accounting records.

    vi. Post-confirmation Trustee duties of the Plan payments are to be made by Debtor if the Court determined Debtor is to make payments, than the Court should require periodic reports by Debtor to the Sub V Trustee to confirm Debtor's compliance with the Plan payment requirements for the duration of the Plan.

2.7 Sub V Trustee supports confirmation of the Plan – with changes consistent with Code provisions as set forth above, provided however that Packet provide credible evidence

regarding the Plan Projections and Plan feasibility, and requiring resolution of remaining issues presented herein.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Sub V Trustee prays that the Court confirm the Plan with Sub V Trustee's requested changes to be consistent with Code requirements, and for such other relief at law and equity to which he may be justly entitled.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By: /s/Michael G. Colvard
    Michael G. Colvard
    State Bar No. 04629200

**SUBCHAPTER V TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2024, a true and correct copy of the foregoing document was served on the parties listed on the attached service list via First Class Postage Pre-Paid Regular U.S. Mail.

/s/ Michael G. Colvard
Michael G. Colvard