**The relief described hereinbelow is SO ORDERED.**

**Signed April 03, 2024.**

_Christopher G. Bradley_
_____
**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PACKET CONSTRUCTION LLC | § | |
| | § | **CASE NO. 23-10860** |
| | § | |
| | § | |
| DEBTOR | § | **CHAPTER 11, Subchapter V** |

### ORDER CONFIRMING DEBTOR'S
### PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(b)

On February 29, 2024, the Court held a hearing (the "Confirmation Hearing") to consider

confirmation of the Plan of Reorganization for a Small Business under Subchapter V of Chapter

11 (the "Plan")[1] filed herein by Packet Construction LLC (the "Debtor") on January 10, 2024

(Docket No. 69). Present or making appearances at the hearing were counsel for the Debtor, the

Debtor's representative, John Miller, the Subchapter V Trustee appointed in the case (hereinafter

"Sub V Trustee"), counsel for certain creditors who have entered an appearance in the case, and

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

the United States Trustee. The Court has reviewed the Plan, considered the documents admitted

into evidence and the testimony of witnesses present at the hearing, considered the statements and

arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors

affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on October 12, 2023 (the "Petition Date"), and was

qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to

proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is

defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(a) and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has

exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of

the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas

was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of

the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely

and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy

Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the

applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the

Bankruptcy Code.

E.      The Plan (with any modifications as set forth below) and the Debtor have satisfied

all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11

U.S.C. § 1129(a)(8) and/or 1129(a)(10). Thus, the Plan cannot be confirmed under 11 U.S.C. § 1191(a). However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with any modifications as set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan as required by 11 U.S.C. § 1191(c).

F.     The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

G.     The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the Debtor to serve as the Disbursing Agent under the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.     The Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 filed by the Debtor on January 10, 2024 (Docket No. 69) and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.     To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.     The effective date of the Plan shall be May 2, 2024 ("Effective Date"), notwithstanding anything to the contrary in the Plan

4.     In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

3

5.    Within three (3) days after the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.    The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.    The Debtor shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Disbursing Agent"). The Debtor shall make all required plan payments to the Disbursing Agent before the 7th of each month for secured creditors and before the 7th day of the month each quarter for the quarterly payments to unsecured creditors. After receipt of the plan payments, the Disbursing Agent will distribute plan payments in accordance with the terms of this Order and the Plan before the [15th] of each month for secured and quarterly for unsecured creditors until all required payments have been made. If the Debtor fails to make all required plan payments to the Disbursing Agent by the deadline, the Disbursing Agent shall provide notice to

4

Debtor and Debtor's counsel and request payment within seven (7) days of the notice. If Debtor fails to make the required plan payment to the Disbursing Agent within seven (7) days of the notice, the Disbursing Agent shall file a notice of default with the Court.

8.      The Disbursing Agent shall file a report six (6) months after the Effective Date and every six (6) months thereafter detailing payment payments made by the Debtor and disbursements made under the Plan.

9.      Within fourteen (14) days of entry of this Order, the Debtor shall provide the Disbursing Agent and the Trustee, if Trustee is not the Disbursing Agent with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Disbursing Agent to send plan payments. If there are any disputed claims, the Debtor shall provide a separate list of such disputed claims and an estimated date of resolution. The Debtor shall file a certificate of service indicating that the claim information required by this paragraph has been timely served on the Disbursing Agent.

10.      Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

11.      Disbursements may be delivered by the Disbursing Agent to (i) the address list provided by the Debtor under paragraph 8; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions shall be made to such claimant as soon as practicable. Undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent shall deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

12.      In the event the Debtor is the Disbursing Agent, Debtor shall provide monthly reports to the Trustee on or before the 1st day of each month following the Effective Date and continuing on each month thereafter, setting forth a Schedule of Payments and confirming Plan payments made by the Disbursing Agent to all creditors having allowed claims and to administrative claimants, setting forth each Class of creditors the allowed claim amounts and the Plan payment for each creditor.

13.      The Trustee shall file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file a final report and seek a discharge of their duties as Trustee.

14.     The Trustee and/or Debtor's counsel shall be compensated for their post-confirmation duties at his approved hourly rate. The Trustee and/or Debtor's counsel may file a notice setting forth post-confirmation fees and expenses on a quarterly basis with the Court. All parties in interest will have fourteen (14) days after the notice is filed to object to the Trustee and/or Debtor's counsel's fees and expenses disclosed therein. If no objection is received, the Debtor shall pay the Trustee and/or Debtor's counsel without further order of the Court.   If payment is not timely provided for Trustee and/or Debtor's counsel's fees, Trustee may utilize Plan payments received from Debtor to pay allowed post-confirmation fees of Trustee or Debtor's counsel.

15.     The Trustee shall file a post-confirmation final fee application within ninety (90) days of the notice of completion of plan payments.   The final fee application shall include all compensation received and disclosed in the quarterly post-confirmation notices filed with the Court.

16.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

17.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the

Debtor may, in accordance with the terms of the Plan, evaluate and determine whether to pursue any such retained claims.

18.     Debtor is required to timely file all post-confirmation tax returns for all state and federal agencies and is solely responsible for paying all post-confirmation federal tax obligations throughout the duration of the Plan period.   The Trustee shall have no obligation to prepare or file any post-confirmation tax returns or to pay any taxes which are not allowed claims within this proceeding.

19.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

20.     Pursuant to 11 U.S.C. § 1192, within thirty (30) days of the filing of the Sub V Trustee's NDR or TFR, the Debtor shall file a motion for entry of the discharge order.   In the motion for entry of discharge, the debtor shall certify that (1) all payments required under the confirmed plan have been made, (2) all administrative expenses, including the approved fees and expenses of the Subchapter V Trustee have been paid in full, and (3) that the debtor is entitled to entry of discharge.

21.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

22.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

23.     All property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

24.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

25.     The following Nonmaterial Plan Modifications are hereby approved:

a.  Notwithstanding anything to the contrary in the plan, holders of claims may pursue their rights and remedies against guarantors of debts of the Debtor, and nothing in the Plan enjoins them pursuing such guarantors

b.  Debtor shall provide to the Trustee semi-annual financial reports reflecting post-confirmation operations including financial statements, income statements and balance sheets, and a statement of net income for the previous six months on the first day of the first month after six months after the Effective Date.

c.  Notwithstanding anything to the contrary in the plan, Debtor shall distribute its projected net income as set forth in Debtor's projections totaling $2,261,591.40 in accordance with the provisions of the Confirmed Plan except that distributions to unsecured creditors shall be made on a quarterly basis.

# # #

SUBMITTED BY:

THE LANE LAW FIRM, PLLC

<u>/s/Robert C. Lane</u>
Robert C. Lane
State Bar No. 24046263
notifications@lanelaw.com
Joshua D. Gordon
State Bar No. 24091592
Joshua.gordon@lanelaw.com
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Telephone
(713) 595-8201 Facsimile
COUNSEL FOR DEBTOR

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

IN RE:                 §
PACKET CONSTRUCTION LLC    §
                         §
    DEBTOR             §     **BANKRUPTCY CASE NO. 23-10860**

## DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### ARTICLE I
### INTRODUCTION

### Identity of the Debtor

Packet Construction LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, Austin Division on October 12, 2023. The Debtor manages and operates a civil construction for electric utilities, which includes site work and foundations for substations and power lines business. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

### Explanation of Chapter 11

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

1

EXHIBIT A

## Explanation of the Confirmation Process

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1 and 5 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Class**. The Class 2, 3 and 4 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 2, 3 and 4. Each holder of an Allowed Claim in Class 2, 3 and 4 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com. To be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor to make payments to its creditors as set forth in this Plan. Debtor seeks to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to its creditors. If the Debtor must seek confirmation of this Plan pursuant to § 1191(b), then the Subchapter V Trustee will act as payment administrator under the Plan.

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. For the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2.    **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Western District of Texas, Austin Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean Packet Construction LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.     **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

19.     **"Entity"** shall include Person, estate trust, and governmental unit.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, October 12, 2023.

23.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified, or supplemented.

24.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25.     **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

5

26.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29.    **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

**NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

6

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Packet Construction LLC ("Packet") started operations in November 2017. Packet manages and operates a civil construction for electric utilities, which includes site work and foundations for substations and power lines business. Packet elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

### Future Income and Expenses Under the Plan

The Debtor filed this case on October 12, 2023. Debtor proposed to pay allowed unsecured based on the liquidation analysis and cash available. Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next five years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 100% by John Miller who is the managing member. Mr. Miller will remain managing member and retain his 100% ownership interest going forward.

7

# ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor manages and operates a civil construction for electric utilities, which includes site work and foundations for substations and power lines business. Packet's assets include its accounts receivable and cash on hand, office furniture, vehicles and equipment. There are fully secured creditors as to this property based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B".

# ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into six classes of Claimants. These claimants will receive cash repayments over a period of time beginning on or after the Effective Date.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants Allowed Administrative Claims of Professionals and Subchapter V Trustee (These claims are unimpaired)** These claims will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $35,000.00. The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants Priority Tax Claims for the Texas Comptroller of Public and the Texas Workforce Commission.** Allowed Priority Claims are for returns and estimated tax returns. Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts and Texas Workforce Commission (the "Comptroller" and "TWC"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller and TWC in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller and TWC to pursue any non-debtor third parties for tax debts or claims, and the Comptroller and TWC specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller's administrative expense tax

8

claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller, the interest rate shall be the statutory interest rate, currently 9.50% per annum; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Comptroller may amend their claims at any point.

The Comptroller shall not be required to file any proof of claim, motion, or request for payment in order to be paid any Administrative Claims for taxes that arise or have arisen in the ordinary course of the Debtor's business, including all post-petition taxes incurred by the Debtor after the Petition Date. All Administrative Claims owed to the Comptroller shall be paid in full with applicable interest through the date payment is made on or before the Effective Date, or as otherwise agreed by the Comptroller, whichever is the respective agency claimant for such Administrative Claim. If any Administrative Claim owed to the Comptroller is not due on the Effective Date, then such Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All priority tax claims and wage claims owed to the Comptroller and the Texas Workforce Commission shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Debtor's bankruptcy petition date; or (3) as otherwise agreed to by the Comptroller and TWC, whichever is the relevant agency to the claim at issue. The Comptroller's priority tax claims and the TWC claim shall accrue interest at the statutory rate of interest, currently 9.50% per annum, from the Plan's Effective Date until paid in full.

**2-1 Texas Comptroller of Public Accounts for Franchise Tax (Claim No. 3-1) (This claim is impaired)** is for franchise tax due and owing to the Comptroller based upon returns filed by the Debtor in 2023 in the amount of $18,492.25. Proof of Claim #3-1 shall be paid in full in equal monthly installments of principal and interest no later than fifty-four (54) months after the Debtor's bankruptcy petition date (being April 2028), or as otherwise agreed to by the Comptroller. Equal monthly installments of principal and interest at 9.50% per annum are to be paid beginning 30 days after the Effective Date and continue until paid in full. The monthly payment amounts for Proof of Claim #3-1 shall be at least $422.18.

**2-2 Texas Workforce Commission (Claim No. 7-1)(This claim is impaired)** is based upon filed returns for 3rd Quarter 2022 taxable wages in the amount of $1,574.61. Proof of Claim #7-1 shall be paid in full in equal monthly installments of principal and interest no later than fifty-four (54) months after the Debtor's bankruptcy petition date (being April 2028), or as otherwise agreed to by the Comptroller. Equal monthly installments of principal and interest at 9.50% per annum are to be paid beginning 30 days after the Effective Date and continue until paid in full. The monthly payment amounts for Proof of Claim #7-1 shall be at least $35.95.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor of Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within five (5) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as

may be appropriate in this court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

**Class 3 Claimants – Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**3-1  Caterpillar Financial Services (Claim No. 21-1)** claim in the amount of $111,921.17 is secured by a 2015 Caterpillar 416FST Backhoe Loader (KSF02092) and a 2019 Caterpillar D5K2XL Track Tractor (KSF02092). Debtor proposes to pay the value of Caterpillar Financial Services' claim in the amount of $109,500.00 at 8.50% over 5 years in 60 equal monthly payments at $2,246.56 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-2  Centra Funding LLC (Claim No. 14-1)** claim in the amount of $46,895.83 is secured by a 2013 Ledwell Trailer (VIN 1L9GA72A9DL033152). Debtor proposes to pay the value of Centra Funding LLC's claim in the amount of $30,000.00 at 8.50% over 5 years in 60 equal monthly payments at $615.50 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-3  JCB Financial Inc. (no Claim Filed)** claim in the amount of $84,000.00 is secured by a skid steer with bucket, auger drive and bit. Debtor proposes to pay the secured claim of JCB Financial in the amount of $84,000.00 at 8.50% over 5 years in 60 equal monthly payments at $1,723.39 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-4  North Mill Credit Trust (Claim No. 24-1)** claim in the amount of $364,455.30 is secured by a 2018 Freightliner M2 (VIN 3ALHCYFEXJDJJ7559). Debtor proposes to pay the value of North Mill Credit Trust's claim in the amount of $250,000.00 at 8.50% over 5 years in 60 equal monthly payments at $5,129.13 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-5  Providence Equipment Finance (No Claim Filed)** claim in the amount of $55,000.00 is secured by Gen10 5218 Hard Drives, Computer Data Rack, Back up batter and hard drive back ups. Debtor proposes to pay the value of Providence Equipment Finance's claim in the amount of $10,750.00 at 8.50% over 5 years in 60 equal monthly payments at $220.55 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-6 Territorial Bank of American Samoa (Claim No. 27-1)** claim in the amount of $70,421.32 is secured by a 2020 Freightliner M2 106 (VIN: 3ALACVFE5LDKR0294). Debtor proposes to pay the secured claim of Territorial Bank of American Samoa in the amount of $70,421.32 at 8.50% over 5 years in 60 equal monthly payments at $1,444.80 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-7 Texas Regional Bank (No Claim Filed)** claim in the amount of $40,000.00 is secured by a 2021 Ford Bronco. Debtor proposes to pay the secured claim of Texas Regional Bank in the amount of $40,000.00 at 8.50% over 5 years in 60 equal monthly payments at $820.66 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-8 U.S. Small Business Administration aka SBA (No Claim Filed)** has a secured claim amount of $2,151,526.78. The SBA asserts it is fully secured by the Debtor's business property pursuant to a UCC Lien that was recorded on May 24, 2020, which appears to put this claim in Lien Position 1. Therefore, Debtor proposes to pay the secured portion of the SBA's claim in the amount of $1,044,741.23 at 8.50% over 5 years in 60 equal monthly payments at $21,434.47 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**3-9 Spartan Business Solutions LLC (Claim 13-1)** has an alleged secured claim amount of $76,234.00. Spartan Business Solutions asserts it is fully secured by the Debtor's business property pursuant to a UCC Lien that was recorded on October 19, 2022, which appears to put this claim in Lien Position 2. Therefore, this claim is fully under secured and will be treated in Class 4 of this Plan.

11

      **Class 4 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than the 15th day of the first full calendar month following 30 days after the effective date of the plan and continuing every year thereafter. Debtor will distribute up to $216,000.00 (includes claim objection creditor) to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan, includes the under-secured claim portions.  The Debtor's General Allowed Unsecured Claimants will receive 3.79% of their allowed claims under this plan.  See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 3.79% of Total Claim |
|---|---|---|
| | | |
| Ahern Rentals, Inc. (POC #15-1) | $74,217.81 | $2,810.69 |
| Arcosa Aggregates (POC #19-1) | $683,341.05 | $25,878.71 |
| Arnold Crushed Stone | $18,061.96 | $684.02 |
| Big Bend Services, LLC (POC #4-1) | $155,400.00 | $5,885.13 |
| Braun Intertec Corp (POC #18-1) | $7,460.00 | $282.52 |
| Capital Quarries Company (POC #17-1) | $318,132.82 | $12,047.96 |
| Concrete Mobility LLC | $397,232.12 | $15,043.52 |
| Conners Construction Inc | $84,646.34 | $3,205.63 |
| David Neal LLC | $24,194.70 | $916.27 |
| EnviroCon Systems (POC #5-1) | $59,193.33 | $2,241.70 |
| Euler Hermes NA Insurance Co as Agent for ENVI (POC # 16-1) | $59,193.33 | $2,241.70 |
| Ewald Kubota Inc (POC #9-1) | $26,033.85 | $985.92 |
| Force Logistics (POC #10-1) | $60,000.00 | $2,272.25 |
| Herc Rentals Inc (POC # 23-1) | $68,108.75 | $2,579.34 |
| HKA Enterprises (POC # 8-1) | $1,023,888.98 | $38,775.55 |
| Landpoint | $16,643.56 | $630.31 |

12

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 5-year Plan at 3.79% of Total Claim |
|---|---|---|
| Lonestar Forklift | $13,840.64 | $524.16 |
| Longview Truck Center | $38,623.80 | $1,462.72 |
| Martin Marietta Materials | $31,062.38 | $1,176.36 |
| Mid-Tex Testing LLC (POC # 26-1) | $7,904.30 | $299.34 |
| Nucor Harris Rebar South LLC (POC # 28-1) | $41,366.25 | $1,566.58 |
| Prosperum Capital Partners aka Arsenal (POC # 11-1) | $53,650.03 | $2,031.77 |
| Prosperum Capital Partners aka Arsenal (POC # 12-1) | $429,308.32 | $16,258.27 |
| SBA | $1,106,785.55 | $41,914.92 |
| SBM Earthmoving & Construction | $6,378.79 | $241.57 |
| Simpson Crushed Stone | $10,185.30 | $385.73 |
| SIR, LLC | $420,000.00 | $15,905.76 |
| Southeast Readi-Mix Products | $25,914.95 | $981.42 |
| Southstar Financial (POC #6-1) | $155,838.00 | $5,901.72 |
| Spartan Business Solutions (POC #13-1) | $76,234.00 | $2,887.05 |
| Stealth Monitoring (POC # 1-1) | $12,407.97 | $469.90 |
| Suncoast Post-Tension LTD (POC # 2-1) | $61,179.41 | $2,316.92 |
| Terracon Consultants (POC # 20-1) | $62,045.60 | $2,349.72 |
| Texas First Rentals (POC #25-1) | $26,636.82 | $1,008.76 |
| Tex-Mix Partners LTD (POC # 22-1) | $48,483.38 | $1,836.11 |
| Totals: | $5,703,594.09 | $216,000.00 |

By making payments to the unsecured creditors, Debtor is not waiving or otherwise releasing any claims or defenses it may have as to the nature, entitlement, or amount of these debts. The Debtor explicitly reserves it rights to challenge or seek other judicial recourse pertaining to these debts including but not limited to claims of usury, avoidance, or preferential transfers.

13

**Class 5 Equity Interest Holders (Current Owners)** are not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan; however, they will be allowed to retain ownership in the Debtor. Class 5 Claimants are not impaired under the Plan.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

### Claims Bar Date.

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was December 21, 2023. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.

### Effect of Bar Date.

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

### Standing.

Following the Effective Date, the Debtor shall have standing to object to Claims.

### Objection Deadline.

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated in the Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

### Allowance of Claims.

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

14

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.      Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deems appropriate.

B.      Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.      Vesting of Assets.

Upon the Effective Date, all assets of the Estate shall vest in the Debtor, except as otherwise provided in the Plan.

D.      Discharge.

1.      Consensual Plan

A consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtor will not be discharged from any debt imposed by this Plan.

2.   Non-consensual Plan

A non-consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

E.   Injunction Against Interference with Plan.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

F.   Payments under the Plan.

Regardless if the Debtor confirms the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, Debtor shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtor asserts that cause exists to allow the Debtor to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor is better able to monitor and maintain its cash flows.

## ARTICLE IX
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under the Plan. If the plan is confirmed, a creditor may not enforce liability under a guaranty or other third-party claim unless the Debtor defaults under the Plan for that creditor. In the event of default, only the amount owing under the Plan shall be recovered from the guarantor. This provision is intended to apply to creditors who had previously recovered judgments against the guarantor.

16

## ARTICLE X
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE XI
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $35,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $5,703,594.09 (includes claim objection creditor). The Debtor's assets include funds in the bank, office equipment, inventory, and accounts receivable. Unsecured creditors are receiving at least 80% of their claim if not more under the terms of the Plan.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XIV
## <u>EVENTS OF DEFAULT AND EFFECT THEREOF</u>

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## <u>DISCHARGE</u>

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## <u>RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN</u>

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate other than the litigation to collect pending accounts receivable.

Dated: January 10, 2024

Respectfully submitted,

Packet Construction LLC

By: */s/John Miller*
John Miller, Owner

19

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| | | | | | |
| **Revenue** | | | | | |
| Total Revenue | $6,000,000.00 | $6,250,000.00 | $6,500,000.00 | $6,750,000.00 | $7,000,000.00 |
| | | | | | |
| **Expenses** | | | | | |
| PAYROLL | $2,194,200.00 | $2,286,250.00 | $2,377,700.00 | $2,469,150.00 | $2,560,600.00 |
| PAYROLL TAXES | $164,565.00 | $171,468.75 | $178,327.50 | $185,186.25 | $192,045.00 |
| Office Lease/Equipment Yard | $30,000.00 | $32,400.00 | $35,640.00 | $37,000.00 | $38,480.00 |
| Job Supplies (concrete, rebar, rock) | $1,957,980.00 | $2,047,062.50 | $2,131,145.00 | $2,214,727.50 | $2,300,310.00 |
| Fleet Cost (maintenance, fuel, etc) | $300,000.00 | $312,500.00 | $325,000.00 | $337,500.00 | $350,000.00 |
| EQUIPMENT RENTAL/LEASES | $600,000.00 | $625,000.00 | $650,000.00 | $675,000.00 | $700,000.00 |
| Insurance | $200,000.00 | $216,000.00 | $237,600.00 | $250,000.00 | $260,000.00 |
| Professional Fees (Legal and Accounting) | $90,000.00 | $95,000.00 | $100,000.00 | $105,000.00 | $110,000.00 |
| Misc Business Expenses | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 | $18,000.00 |
| **Total Expense** | ($5,554,745.00) | ($5,803,681.25) | ($6,053,412.50) | ($6,291,563.75) | ($6,529,435.00) |
| **Net Operating Income** | **$445,255.00** | **$446,318.75** | **$446,587.50** | **$458,436.25** | **$470,565.00** |

| **PLAN PAYMENTS** | | | | | |
|---|---|---|---|---|---|
| Claim | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
| **Priority Claims** | | | | | |
| Texas Comptroller (POC #3-1) | $5,066.16 | $5,066.16 | $5,066.16 | $5,066.16 | $5,066.16 |
| Texas Workforce Commission (POC #7-1) | $431.40 | $431.40 | $431.40 | $431.40 | $431.40 |
| | | | | | |
| **Secured Claims** | | | | | |
| Caterpillar Financial Services (POC #21-1) | $26,958.72 | $26,958.72 | $26,958.72 | $26,958.72 | $26,958.72 |
| Centra Funding (POC # 14-1) | $7,386.00 | $7,386.00 | $7,386.00 | $7,386.00 | $7,386.00 |
| JCB Financial Inc | $20,680.68 | $20,680.68 | $20,680.68 | $20,680.68 | $20,680.68 |
| North Mill Credit Trust (POC # 24-1) | $61,549.56 | $61,549.56 | $61,549.56 | $61,549.56 | $61,549.56 |
| Providence Equipment Finance | $2,646.60 | $2,646.60 | $2,646.60 | $2,646.60 | $2,646.60 |
| Territorial Bank of American Samoa (POC #27-1) | $17,337.60 | $17,337.60 | $17,337.60 | $17,337.60 | $17,337.60 |
| Texas Regional Bank | $9,847.92 | $9,847.92 | $9,847.92 | $9,847.92 | $9,847.92 |
| SBA (Secured Portion) | $257,213.64 | $257,213.64 | $257,213.64 | $257,213.64 | $257,213.64 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| Unsecured Portion to be paid at 3.79% | $36,000.00 | $36,000.00 | $36,000.00 | $48,000.00 | $60,000.00 |
| | | | | | |
| **Annual Plan Payment** | $445,118.28 | $445,118.28 | $445,118.28 | $457,118.28 | $469,118.28 |
| | | | | | |
| **Projected Remaining After Plan Payments** | **$136.72** | **$1,200.47** | **$1,469.22** | **$1,317.97** | **$1,446.72** |

EXHIBIT A

23-10860-cgb Doc#98 Filed 04/03/24 Entered 04/03/24 18:34:52 Main Document Pg 31 of 31

23-10860-cgb Doc#69-2 Filed 01/10/24 Entered 01/10/24 17:02:24 Exhibit B - Ex. B - Projected Liquidation Page 31 of 31 Bright Construction LLC - 23-10860

| Asset | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| Cash | $9,180.76 | $20,038.55 | $0.00 | $20,038.55 | |
| Accounts Receivable | $786,656.87 | $866,506.00 | $0.00 | $797,864.00 | |
| Deposits | $20,000.00 | $20,000.00 | $0.00 | $20,000.00 | |
| **OFFICE FURNITURE/FIXTURES** | | | | | |
| Desks, Chairs, Computers, Monitors, Filing Cabinets, Tables, Phones and Copiers | $10,000.00 | $10,000.00 | $0.00 | $10,000.00 | Providence Equipment |
| Computer Data Rack, Gen10 Hard Drives, Hard Drive Back Ups and Back up Battery | $10,750.00 | $10,750.00 | $0.00 | $0.00 | |
| **EQUIPMENT AND VEHICLES** | | | | | |
| 2019 Ford F-250 | $23,250.00 | $23,250.00 | $23,250.00 | $0.00 | |
| 2020 Freightliner M2 106, VIN 0294 | $92,000.00 | $92,000.00 | $70,421.32 | $21,578.68 | Territorial Bank of American Samoa |
| 2010 Mack CHU613 Dump Truck | $38,000.00 | $38,000.00 | $0.00 | $38,000.00 | |
| 2003 Freightliner FL-80 VIN 9363 | $25,000.00 | $25,000.00 | $0.00 | $25,000.00 | |
| 2018 Freightliner M2 VIN 7559 | $250,000.00 | $250,000.00 | $364,455.30 | $0.00 | North Mill Credit Trust |
| 2021 Ford Bronco | $50,000.00 | $50,000.00 | $44,741.00 | $5,259.00 | Texas Regional Bank |
| 2018 Big Tex Bumper Pull VIN 3956 | $4,000.00 | $4,000.00 | $0.00 | $4,000.00 | |
| 2018 Big Tex Enclosed Tool Trl. VIN 6623 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2018 Big Tex Bumper Pull VIN 9861 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2018 Big Tex Bumper Pull VIN 0919 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2018 Big Tex Bumper Pull VIN 4940 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2018 Lark Trailer VIN 7584 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2018 Big Tex Trailer VIN 3373 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2019 MAXXD Trailer VIN 1022 | $7,500.00 | $7,500.00 | $0.00 | $7,500.00 | |
| 2017 Caterpillar 303.5ECR VIN 3023 | $20,000.00 | $20,000.00 | $0.00 | $20,000.00 | |
| 2012 Gooseneck PJ Trailer VIN 6763 | $5,000.00 | $5,000.00 | $0.00 | $5,000.00 | |
| 2018 Big Tex Bumper Pull Trailer VIN 9622 | $1,500.00 | $1,500.00 | $0.00 | $1,500.00 | |
| 2013 Ledwell Trailer VIN 3152 | $30,000.00 | $30,000.00 | $46,895.83 | $0.00 | Centra Funding |
| 2012 Heartland 4701 Cyclone 5th Wheel Trailer | $40,000.00 | $40,000.00 | $0.00 | $40,000.00 | |
| 2008 Caterpillar 289D VIN 2240 | $20,000.00 | $20,000.00 | $0.00 | $20,000.00 | |
| 2015 Caterpillar 303.5ECR VIN 0419 | $20,000.00 | $20,000.00 | $0.00 | $20,000.00 | |
| 2017 Caterpillar 303.5ECR VIN 3023 | $20,000.00 | $20,000.00 | $0.00 | $20,000.00 | |
| 2015 Caterpillar 416F5T Backhoe Loader (KSF02092) and 2019 Caterpillar D5K2XL Track Tractor (KSK02092) | $109,500.00 | $109,500.00 | $111,921.17 | $0.00 | Caterpillar Financial |
| 2012 JLG G10-55A Forklift | $20,000.00 | $20,000.00 | $20,000.00 | $0.00 | |
| **INTERNET DOMAINS** | | | | | |
| Internet Domain | $1.00 | $1.00 | $0.00 | $1.00 | |
| **TOTAL** | $1,581,338.63 | $1,672,045.55 | $681,684.62 | $1,044,741.23 | |
| **Secured Claim** | | | | | |
| US Small Business Administration | | | $2,151,526.78 | $0.00 | |
| | | | | $0.00 | |
| **Remaining Amount Available for Unsecured Creditors** | | | | $0.00 | |
| **Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditors)** | | | | $5,703,594.09 | |