

**Dated: April 30, 2024.**

_____
**CHRISTOPHER G. BRADLEY
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 23-10860 |
| PACKET CONSTRUCTION, LLC § | |
| § | (Chapter 11; Subchapter V) |
| DEBTOR § | |

## OPINION ON DISPOSABLE INCOME
## TRUE UPS IN A SUBCHAPTER V CASE

### Introduction

In this subchapter V case, the trustee objected to the debtor's proposed plan because, while the plan provided for the debtor to pay its projected disposable income to its creditors for five years, the plan did not provide for a "true up"—that is, it did not provide that the debtor had to pay more if actual disposable income exceeded projections.

But subchapter V does not include a requirement that debtors true up their plan payments if actual income exceeds projected income. There may be circumstances under which a court could determine that the failure to provide actual disposable income, rather than projected disposable income, was not fair and equitable to a non-accepting impaired class of unsecured creditors. But in general, the Court does not believe that a true-up requirement can be imposed on subchapter V debtors. For that reason, the objection was overruled.

1

## Background

Packet Construction, LLC (the "Debtor") filed its plan on January 10, 2024.[1] The subchapter V trustee objected on several bases,[2] most of which were resolved prior to or at the confirmation hearing. The trustee did not object to the Debtor's projected disposable income calculation, which required payments to unsecured creditors of $36,000 in year 1 up to $216,000 in year 5, but he argued that the plan should also require that those payments be adjusted upwards if the projections prove too pessimistic.[3]

The Court held a further hearing after receiving a draft confirmation order that left several matters incomplete or unclear. After receiving a revised order, the Court confirmed the plan.[4]

## Analysis

The subchapter V trustee in this case has been conscientious and helpful and, in the Court's view, his efforts improved the plan and the confirmation order. But the Court issues this opinion to explain why it overruled one of the trustee's objections: the objection that the plan did not include a "true up." In this context, a true up means that, in addition to requiring the Debtor to pay its *projected* disposable income, the plan would require that if the Debtor's *actual* disposable income exceeds the projected income, the Debtor must report that surplus and pay it to creditors.[5]

---

[1] Chapter 11 Sub V Plan, ECF No. 69.
[2] Sub V Trustee's Limited Obj., ECF No. 87.
[3] *Id*. at 10–11.
[4] Order Confirming Chapter 11 Sub V Plan, ECF No. 98.
[5] The objection was stated as follows:
> Projections v. Actual Disposable Income: Debtor should be directed to pay actual income to creditors to the extent projected disposable income as stated in the Plan exceeds projected income. *See, In re Staples*, 2023 W.L. 11943 (M.D. Fla. Jan. 6, 2023). Upon confirmation, the Court should require Debtor to "true up" actual disposable income – to reflect any increase above the projected disposable income and make actual net disposable income available to creditors. Debtor should be required to provide semi-annual or annual financials to the Sub V Trustee if the Plan is confirmed under § 1191(b), whereupon the Sub V Trustee will recommend increase of disposable income payments if financials reflect an increase in disposable income over Projections. If Debtor disagrees, the issue can then be presented to the Court for resolution.

Sub V Trustee's Limited Obj. 10–11, ECF No. 87.

The issue of whether a court should or could require a true-up provision arises only in cases in which there is a non-accepting, impaired class of unsecured creditors, thereby permitting the court to confirm the plan, if at all, under section 1191(b). Such "cram down" plans require that, for a plan to be determined fair and equitable with respect to a non-accepting, impaired class, the debtor, at a minimum, must devote its "projected disposable income" for a period of three to five years, as set by the court, to its plan payments. The Court does not see any reason why a debtor could not include some sort of true up in a consensual plan if it wishes, for instance as a result of negotiations with creditors in order to win their support of the plan.[6] But here we are concerned with whether true ups can be imposed by a court, and that issue arises only in the context of plans confirmed under section 1191(b).

This Debtor seeks to confirm its plan under section 1191(b) and therefore is required to devote its "projected" disposable income to its plan payments. So the Court turns now to analyze whether section 1191(b) authorizes the court to require true-up payments if actual disposable income exceeds projected disposable income.

**A.   The Code requires a cram down subchapter V plan to provide for payment of "projected" disposable income; to require a true up is to read the word "projected" out of the Code.**

Subchapter V requires that projected disposable income must be included in a plan confirmed under section 1191(b) but makes no mention of a true up of any potential gap between actual and projected income.[7] In specific, subchapter V cram down plans must be "fair and equitable," with that term defined to mean that projected disposable income be devoted to plan payments:

> [T]he condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements . . .
> (2)  As of the effective date of the plan—
>    (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is

---

[6] Subchapter V contains various incentives to confirm plans consensually. *See, e.g.*, 11 U.S.C. § 1191(a) (directing courts to confirm consensual plans that do not satisfy additional requirements applicable to nonconsensual plans, such as the projected disposable income requirement under § 1191(c)(2) and the feasibility components of the fair and equitable rule under § 1191(b)).

[7] *See* 11 U.S.C. § 1191.

3

      due under the plan will be applied to make payments under the plan; or

  (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.[8]

Section 1191(d) then defines "disposable income" to mean the debtor's income less its necessary expenses:

> Disposable Income.—For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—
> (1) for—
>   (A) the maintenance or support of the debtor or a dependent of the debtor; or
>   (B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or
> (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.[9]

So, then, the statute requires the debtor to devote its *projected* disposable income (or the value of it) to plan payments for three to five years. The Bankruptcy Code does not define "projected." But its normal meaning is: "Estimated or forecast on the basis of current trends or data."[10] This accords with the "forward-looking approach" that the Supreme Court has endorsed when interpreting that term in the context of chapter 13 of the Code.[11]

To require a "true up" is to eliminate the future-looking element indicated by the word "projected." Plan payments would be adjusted based on actual income,

---

[8] 11 U.S.C. § 1191(c).
[9] 11 U.S.C. § 1191(d).
[10] *Projected*, OXFORD DICTIONARIES, https://premium.oxforddictionaries.com/us/definition/american_english/projected (last visited April 29, 2024).
[11] *Hamilton v. Lanning*, 560 U.S. 505, 519 (2010) (establishing "projected disposable income" requires calculating "current monthly income" as prescribed by statute, and then, where circumstances warrant, "go[ing] further and tak[ing] into account other known or virtually certain information about the debtor's future income or expenses" to adjust that income in order to make the projection more accurate).

which would be assessed on an ongoing or retrospective basis,[12] rather than prospectively as the Code plainly instructs. To require that actual income be paid into the plan is to read the word "projected" out of the statute.

It appears that the only reported subchapter V case in which a true up has been required is *In re Staples*.[13] In *Staples*, the bankruptcy court apparently forced a true up into a subchapter V plan by a "Corrective Order" that effectively modified the plan to include a true up, over the debtor's objection.[14] The *Staples* opinion is from the district court that approved this action on appeal. The opinion finds that the bankruptcy court had sufficient authority to impose the true up under section 105 of the Bankruptcy Code, which provides that a Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[15] Additionally, the district court found that the bankruptcy court had authority under the All Writs Act.[16] The *Staples* court held that these sources of law gave the bankruptcy court authority to enter the Corrective Order and that the true-up provisions in the Order "were clearly necessary and appropriate under the facts of this case."[17] The opinion does not describe "the facts of this case" with any specificity.

The *Staples* opinion does not support imposition of a true up either as a general rule or in this case. First, the *Staples* opinion does not purport to announce a general rule requiring true ups, nor, in this Court's view, would the authorities it cites provide

---

[12] The trustee's objection, for instance, proposes "[d]ebtor should be required to provide semi-annual or annual financials to the Sub V Trustee if the Plan is confirmed under § 1191(b), whereupon the Sub V Trustee will recommend increase of disposable income payments if financials reflect an increase in disposable income over Projections." Sub V Trustee's Limited Obj. 10–11, ECF. No. 87.
[13] *In re Staples*, No. 2:22-cv-157, 2023 WL 119431 (M.D. Fla. Jan. 6, 2023).
[14] The Corrective Order contained the following provision:
> The distributions to Class 7 unsecured creditors shall fluctuate based upon the Debtor's actual disposable income remaining after payment of senior claims . . . . The distributions to Class 7 unsecured creditors will be based upon the Debtor's actual disposable income as reflected on the quarterly operating reports; provided, however, if the Debtor's actual disposable income is less than $150.00 in each quarter, the Debtor will still distribute $150.00 pro rata to Class 7 unsecured creditors.

*Id.* at *2.
[15] 11 U.S.C. § 105(a).
[16] 28 U.S.C. § 1651(a) ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").
[17] *Staples*, 2023 WL 119431, at *4.

5

sufficient support for such a general rule. Second, the *Staples* opinion simply does not provide enough factual detail about that case to assess its similarities or differences with this Debtor's situation. For these reasons, the Court, respectfully, does not think that the *Staples* opinion provides any persuasive weight in favor of imposition of a true up.

**B.     Case law on analogous provisions in other chapters of the Code strongly—though not uniformly—weighs against a true-up requirement.**

The projected disposable income tests in both chapter 12 and chapter 13 are very similar to that in subchapter V. The approaches taken in the Supreme Court and other courts favor a prospective interpretation of "projected disposable income" and weigh against imposing a true-up requirement.

The definition of "disposable income" in subchapter V is substantially the same as in chapter 12 and chapter 13.[18] Those chapters also provide for similar requirements when that projected income must be devoted to plan payments. In chapter 13 cases, the court may not approve a nonconsensual plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period … will be applied to make payments to unsecured creditors under the plan."[19] Substantially the same language was included in the chapter 12 projected disposable income test when the chapter was first enacted in 1986.[20] It is essentially identical to the first projected disposable income test in subchapter V—the "payments" approach of section 1191(c)(2)(A) of the Code.[21]

---

[18] *Compare* 11 U.S.C. § 1191(d) *with* § 1225(b)(2) *and* § 1325(b)(2). The subchapter V definition of disposable income differs from the chapter 13 definition in that a chapter 13 debtor may deduct charitable contributions from amounts "reasonably necessary" for maintenance and support. 11 U.S.C. § 1325(b)(2)(A)(ii). Additionally, an above-median-income debtor in chapter 13 is subject to the means test to calculate amounts "reasonably necessary" for maintenance and support, whereas a subchapter V debtor's disposable income is not subject to means test at all when calculating amounts "reasonably necessary to be expended." 11 U.S.C. § 1325(b)(3). Instead, under the subchapter V disposable income definition, the "reasonably necessary to be expended" calculation is the same as the relevant calculation for chapter 12 cases, chapter 13 below-median-income cases, and all chapter 13 cases prior to BAPCPA's introduction of the means test in 2005. *See* 11 U.S.C. §§ 1191(d), 1225(b)(2); 11 U.S.C. § 1325 (2004).
[19] 11 U.S.C. § 1325(b)(1)(B).
[20] 11 U.S.C. § 1225(b)(1)(B).
[21] I am grateful to Hon. Paul W. Bonapfel (N.D. Ga.) for help with both my terminology and my understanding of the "payments" approach and "value" approach, although he should not be held responsible for any of my conclusions.

6

Additionally, subchapter V's alternative projected disposable income test—the "value" approach contained in section 1191(c)(2)(B)—is the same as the analogous alternative test in chapter 12 of the Code.[22] Recall from above that the alternative subchapter V test states that a plan can be "fair and equitable" if "the value of the property to be distributed under the plan" is at least as much as the projected disposable income.[23] The value test essentially gives flexibility on the timing of payment. Under it, a plan can be approved as long as the proposed plan payment or payments, whenever they are made, are equal not in amount but in *value*—that is, *as adjusted based on the time value of money*—to the projected disposable income over the relevant plan period. For example, a debtor could presumably satisfy the test by making a lump-sum cash payment to unsecured creditors, so long as it is greater than or equal to the total projected disposable income over the relevant plan period, after both of those amounts are adjusted to their present values to allow their comparison.[24]

Due to these similarities of subchapter V with chapter 12 and chapter 13, the case law on those chapters is instructive. Because far more debtors file for relief under chapter 13 than chapter 12, there is much more case law about chapter 13. Courts interpreting the similar language in chapter 13 have overwhelmingly ratified a prospective interpretation, that is, an interpretation requiring debtors to devote their projected income to plan payments, but not to "true it up" if their actual income

---

[22] *Compare* 11 U.S.C. § 1191(c)(2)(B) *with* § 1225(b)(1)(C).
[23] 11 U.S.C. § 1191(c)(2)(B) (providing that a plan can be fair and equitable so long as "the value of the property to be distributed under the plan in a 3-year period, or such long period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor").
[24] *Id.*; *Legal Serv. Bureau Inc. v. Orange Cty. Bail Bonds, Inc. (In re Orange County Bail Bonds, Inc.)*, 638 B.R. 137, 146–47 (B.A.P. 9th Cir. 2022) (holding that a plan using liquidated asset proceeds to make payments in excess of the present value of the projected disposable income over the applicable plan period satisfies section 1191(c)(2)(B)); *In re Lost Cajun Enters., LLC*, 634 B.R. 1063, 1068 (Bankr. D. Colo. 2021) (confirming a subchapter V plan where debtor's CEO made an equity contribution equal to the three-year disposable income projection to pay unsecured creditors in cash on the effective date of the plan).
To be more specific, because projected disposable income will often be a stream of (usually monthly) payments, each of those payments would have to be reduced by present value using an appropriate interest rate. The proposed plan payment or payments would similarly have to be reduced using the same method. In order to pass the test, the present value of the plan payments would have to meet or exceed the present value of the projected disposable income: present value (plan payment(s)) ≥ present value (projected disposable income over plan term).

proves to be higher.[25] While not speaking on this exact question, the Fifth Circuit has also repeatedly indicated support for a forward-looking interpretation of chapter 13's disposable income test.[26]

Against this view, some courts have required chapter 12 debtors to true up their payments before receiving a discharge at the end of their plan. The leading case is the Eighth Circuit case of *Rowley v. Yarnall* from 1994, where the Court of Appeals held that the chapter 12 debtors had to pay unsecured creditors all actual disposable income during the plan period.[27] In that case, the appellate court affirmed the bankruptcy court's holding that chapter 12 debtors had to devote actual disposable income to the plan. It distinguished this requirement from chapter 11 and 13 confirmation requirements, based on the provision's legislative history.[28]

The *Rowley* court admitted that its result was contrary to the text's plain meaning.[29] It defended its decision on grounds that the textual result would be absurd and "would essentially direct farmers to put forth a reorganization plan, which . . . would be confirmed over such objections if they simply 'predict' that disposable income will be zero."[30]

---

[25] *See, e.g.*, *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 357–58 (9th Cir. 1994) (holding that section 1325(b)(1)(B) does not require debtors to pay actual disposable income but only projected disposable income as calculated at confirmation); *Toso v. Bank of Scotland (In re Toso)*, No. EC-05-1290, 2007 WL 7540985, at *11–12 (B.A.P. 9th Cir. Jan. 10, 2007) (affirming that a chapter 12 debtor must only devote projected disposable income rather than actual disposable income as a prerequisite for plan confirmation); *Haynes v. Heath (In re Heath)*, 182 B.R. 557, 559–60 (B.A.P. 9th Cir. 1995) (holding that debtors are not required to include future tax refunds in projected disposable income absent a showing that the refunds are projected as the effective date of the plan); *In re Styerwalt*, 610 B.R. 356, 371 (Bankr. D. Colo. 2019) (quoting *Hamilton*, 560 U.S. at 519) (holding that there was not enough evidence to demonstrate that the debtor's future bonus income was "known or virtually certain" to require debtor to include potential future bonuses under the plan); *In re Ridenhour*, No. 3:14-bk-13339, 2016 WL 1688734, at *2–3 (Bankr. D. Ariz. Apr. 25, 2016) (holding that the objecting trustee had met its "projectability" burden in showing that debtor's future tax returns should be included in projected disposable income but failed to demonstrate that the (unemployed) debtor-spouse's potential post-petition income should be included).
[26] *In re Nowlin*, 576 F.3d 258, 263–66 (5th Cir. 2009) (affirming a forward-looking interpretation of "projected disposable income"); *In re Killough*, 900 F.2d 61, 65–66 (5th Cir. 1990) (confirming a chapter 13 plan over creditor objection that the plan did not include prospective overtime income into the projected disposable income calculation because the debtor's future opportunities to work overtime were not definite enough).
[27] 22 F.3d 190 (8th Cir. 1994).
[28] *Id.* at 193.
[29] *Id.* at 192.
[30] *Id.*

8

But as numerous courts and commentators have noted, *Rowley*'s reasoning rests on an unsteady foundation.[31] The prospective assessment of projected disposable income is based on objective factors and thus provides a meaningful check. If projected income or expense figures are not well supported, a court should deny confirmation. The *Rowley* court's decision to disregard the text on grounds of absurdity is not convincing. This Court does not believe that the Fifth Circuit would follow it, particularly as it relies on legislative history and policy argument over clear statutory text based only on a questionable finding of absurdity.

In addition, after *Rowley* was decided, the statute was amended. The 2005 BAPCPA amendments added the alternative, "value" approach, as described above, to chapter 12.[32] As noted, this same alternative test was later incorporated into subchapter V.[33] The alternative test makes a true-up requirement functionally unworkable. As mentioned, the alternative test allows debtors to make lump-sum payments with the value of the projected disposable income that would be due over the relevant payment period. To hold that *actual* disposable income, which can only be calculated *retroactively*, must be paid into the plan would make the alternative test superfluous or ineffective: the appropriate lump-sum payment amount must be calculated at the time of confirmation, but the lump-sum amount cannot be calculated if the disposable income, to which the lump-sum payment's value must be compared, remains unknown. Recognizing this problem, some contemporary commentators suggested that the alternative test was directly intended to overturn *Rowley* and similar cases.[34] The post-*Rowley* addition by Congress of the value approach further speaks against *Rowley*'s persuasiveness.

Recent courts in the chapter 13 context continue to cast more doubt on *Rowley*. One bankruptcy court persuasively argued against the true-up approach both as a

---

[31] *See, e.g.*, *In re Bass*, 267 B.R. 812, 817–18 (Bankr. S.D. Ohio 2001) (stating that the *Rowley* court's fears of inaccurately determined projected disposable income are lessened by debtor's duty to file accurate schedules and that plan modification process may allow recapture of actual, unprojected income); 8 COLLIER ON BANKRUPTCY ¶ 1191.04[2][e] (16th ed. 2023); Susan A. Schneider, *Bankruptcy Reform and Family Farmers: Correcting the Disposable Income Problem*, 38 Tex. Tech. L. Rev. 309, 329–31 (2006); Paul W. Bonapfel, *Subchapter V Update* § VI (March 2024) https://www.ganb.uscourts.gov/sites/default/files/sub_v_update_march_2024_3-31-24.pdf.

[32] 11 U.S.C. § 1225(b)(1)(C). *See, e.g.*, COLLIER ON BANKRUPTCY ¶ 1191.04[2][e]; Schneider, *supra* note 31, at 341–42; Bonapfel, *supra* note 31.

[33] U.S.C. § 1191(c)(2)(B).

[34] Schneider, *supra* note 31, at 341–42.

matter of statutory analysis[35] and as a matter of policy. Drawing on retired Judge Lundin's treatise, the court explained that applying a true-up approach in each of the thousands of chapter 13 cases pending at any given time would result in "an administrative nightmare" for trustees and an expensive monitoring problem for creditors.[36]

Another bankruptcy court persuasively argued that *Rowley*'s reasoning runs contrary to the Supreme Court's 2010 decision in *Hamilton v. Lanning*.[37] The test adopted by the Supreme Court in *Hamilton* for calculating "projected" disposable income shows that it is not equivalent to income actually received during the plan period. Instead, projected disposable income must be assessed prospectively, on a forward-looking basis, sweeping in income that at the time of confirmation is "known or virtually certain" to be received during the plan period. In other words, it requires projected—not actual—income to be paid. As such, the holding from *Rowley* adopting the "actual income received" approach runs contrary to the approach taken by the Supreme Court in analyzing a closely analogous statutory framework.[38]

---

[35] *In re Bass*, 267 B.R. at 817–19.

[36] The *Bass* court quotes the following excerpt from retired Judge Lundin's treatise on this issue:
> Any such [actual disposable income] requirement, to be meaningful, must include that all Chapter 13 debtors file periodic reports of income and expenses after confirmation. . . . Multiply the variety of forms, the range of content and the varying quality of information by the number of pending Chapter 13 cases in the district. The volume of paper would be staggering. . . .
> With each reporting period, the trustee would be obligated to review every pending Chapter 13 case to determine whether income and expenses have adjusted to require a change in contributions to the plan. In jurisdictions with large Chapter 13 programs, this would require hundreds or thousands of additional staff hours in the office of the Chapter 13 trustee. Any creditor that undertakes to monitor the periodic filings of income and expense statements would quickly realize that it is an expensive search for a needle in a haystack: future wage increases for most Chapter 13 debtors will be offset by reasonable increases in expenses; many Chapter 13 debtors will actually experience reductions in disposable income during the life of the plan. There is no good evidence that monitoring income and expenses after confirmation on a program-wide basis is cost effective or will improve the average outcome for creditors in Chapter 13 cases.

*Id.* at 818 (quoting 2 Keith M. Lundin, CHAPTER 13 BANKRUPTCY § 164.1 (3rd ed. 2000)).

[37] 560 U.S. 505. *In re Grier*, 464 B.R. 839, 847 (Bankr. N.D. Iowa 2011) ("[T]he holding from *Rowley* adopting the 'actual income received' appears to have been effectively overruled by *Hamilton v. Lanning*.").

[38] *Id.* Few cases appear to follow *Rowley* after both *Hamilton* and BAPCPA. *See, e.g., In re Loganbill*, 554 B.R. 871, 887 (Bankr. W.D. Mo. 2016) (seemingly applying the *Rowley* actual

10

One final point about a way in which subchapter V contrasts with chapter 12 and chapter 13. Unlike subchapter V, in which only the debtor may seek a modification of the plan, in chapters 12 and 13, the statute may provide a mechanism for payments to be adjusted if projections do not meet reality, one way or the other. The debtor, the trustee, or the holder of an allowed unsecured claim may also seek to modify the plan to provide for higher or lower payments.[39] The statute is not completely clear on the relevant standards for modification, and accordingly, courts have differed somewhat in the standards they apply.[40] But in any case, this is the statutory mechanism for how a "true up," if one is merited, can be accomplished under those chapters, but not in subchapter V, except at the request of the debtor and under the conditions provided in section 1193.

Against this backdrop, it is telling that subchapter V provides no opportunity for any party other than the debtor to seek to modify the plan.[41] The implication appears to be that unless the debtor so chooses, no other party can force it to increase the projected payments to meet the actual income. The debtor may be able to modify the plan to decrease the payments if reality falls short of expectations, but the projected income may be the ceiling for creditors in subchapter V cases.

This result is not absurd. As noted above, determining projected disposable income is not a fanciful exercise; it must be established based on objective evidence, and it sets out a demanding standard for many debtors to meet. Vigilant creditors can and should evaluate and, if necessary, challenge projections before plans are confirmed. But construed properly, this aspect of subchapter V also provides

---

disposable income test, with no mention of *Hamilton v. Lanning* or of the BAPCPA amendments). The case law otherwise runs strongly in the other direction. *See, e.g.*, *Grier*, 464 B.R. at 847 (stating that the actual disposable income test aspect of *Rowley* has been overruled).

[39] 11 U.S.C. §§ 1229(a), 1329(a).

[40] Among other modification-related issues, there is a split on when modification can be pursued at all. The Fifth and Seventh Circuits have held that there is no threshold requirement to modify a plan. *In re Wilson,* 555 B.R. 547, 553–54 (Bankr. W.D. La. 2016) (citing *In re Meza*, 467 F.3d 874, 877–78 (5th Cir. 2006)); *In re Witkowski*, 16 F.3d 739, 744–46 (7th Cir. 1994). In contrast, the Fourth Circuit has imposed threshold requirements to modify a plan, holding that res judicata must apply to ensure finality of the case and prevent minor changes in the debtor's financial condition to prompt parties to unnecessarily modify the plan. *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007).

[41] 11 U.S.C. § 1193(c) (allowing the debtor—and implicitly, no other party—to seek to modify a plan at any time before confirmation or any time after conformation and before substantial consummation of the plan).

11

incentive for debtors to exceed projections, because they get to keep the surplus.[42] Perhaps Congress structured the statute this way precisely to induce small business growth and to provide yet another incentive for parties to bargain on consensual plans.

In any case, whether it is ideal policy is not for courts to say. Congress has spoken and, in this Court's view, it has done so clearly. The result is not absurd, and the Court has no hesitation enforcing it.

### C. If there are special circumstance under which a true up can be required, they are not present here.

The analysis above explains why subchapter V includes no general rule imposing a true-up requirement on debtors confirming cramdown plans. It does not necessarily rule out the possibility that circumstances could arise under which a court would have the power to impose a true up. After all, section 1191 states that the "fair and equitable" test "includes" the requirement of meeting one of the alternative "project disposable income" tests; because "includes" is expressly non-limiting in the Bankruptcy Code,[43] other elements could be added to the test, as circumstances warrant, beyond those actually present in the statute.[44]

The Court is skeptical that circumstances exist in which it is appropriate to require a true up. It appears that Congress has spoken squarely on this issue, ordaining that it is future-looking projections and not subsequent realities that determine the income to be contributed to a plan. Courts should be very wary of altering this policy choice in a significant way by requiring the devotion of not just projected but also actual disposable income, as determined retrospectively, to the plan.

But this question need not be determined here. No special circumstances have been alleged, and therefore no true up is warranted.

---

[42] This aspect of the statute also appears to encourage creditors to negotiate with debtors to reach consensual plans, which is again a facet of subchapter V that is evident throughout. *See* 11 U.S.C. § 1191(a) and discussion *supra* note 6.
[43] 11 U.S.C. § 102(3).
[44] *See, e.g.*, *Sandy Ridge Dev. Corp. v. La. Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 346, 352 (5th Cir. 1989).

## Conclusion

For these reasons, the Court holds that there is no general requirement for a subchapter V debtor to "true up" its payments to its creditors when its actual income exceeds its projected disposable income, and there are no circumstances present here that might warrant consideration of a departure from the general rule. Accordingly, no true up will be required or imposed.